**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAUREN CHICKILLY,** | : | **Civil No. 3:14-CV-2173** |
| | : | |
| **Plaintiff** | : | **(Judge Mariani)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **PANTHER VALLEY** | : | |
| **SCHOOL DISTRICT,** | : | |
| | : | |
| **Defendant** | : | |

## REPORT AND RECOMMENDATION

## I.   INTRODCUTION

Lauren Chickilly brought this action against her former employer, the Panther Valley School District, alleging that she received unequal pay in violation of the Equal Pay Act, 29 U.S.C. § 206(d), and that she was retaliated against in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3).

The school district has moved for summary judgment, and the motion has been referred to the undersigned for purposes of preparing a report and recommendation.  For the reasons that follow, we find that the plaintiff has failed to adduce sufficient evidence to support either claim, chiefly because the undisputed evidence shows that the male employees whom the plaintiff claims are

comparators in fact perform substantially different work than she does, and, therefore, are not valid comparators for purposes of demonstrating unequal pay.

Additionally, the plaintiff has failed to identify any evidence to support her claim that she was retaliated against when she complained about what she believed were the unequal terms of her employment, and the undisputed facts show that the decision to furlough the plaintiff's employment was made before she filed a grievance with her union steward. Accordingly, it will be recommended that the motion for summary judgment be granted with respect to both claims.

## II.   **BACKGROUND**

### A.   **The Parties' Factual Statements and Reference to the Record**

The factual background to this report is taken from the parties' competing statements of undisputed material facts, as well as citation to evidence in the record. (Docs. 18, 24, and Exhibits.) Because we ultimately conclude that the plaintiff has presented insufficient evidence either to make out a prima facie case for an Equal Pay Act claim, and insufficient evidence to support her claim for retaliation, we are constrained to observe several matters at the outset that contributed to this finding.

The Local Rules of this Court require that a motion for summary judgment be accompanied by "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine

issue to be tried." LR 56.1.  The Local Rules also require that the party opposing summary judgment file a responsive statement, indicating those facts that give rise to a genuine issue to be tried.  *Id.*  The Local Rules provide further that "[s]tatements of material fact in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.  All material facts set forth in the statement required to be served by the nonmoving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."  *Id.*

The defendant filed a statement of undisputed materials facts, including citation to deposition testimony and other record evidence supporting the factual assertions, which is also attached.  (Doc. 18 ("Def. SMF") and Exhibits.)   In all instances, the defendant has offered citation to testimony and other evidence in the record that provides direct factual support for the fact being asserted as true.

The plaintiff responded to this statement, purporting to dispute number of the facts, or to dispute generally the way in the defendant characterized them.  (Doc. 24 ("Pl. SMF").)   There are, however, significant shortcomings in this responsive statement.  First, although the plaintiff has purported to dispute a number of the school district's properly supported factual assertions, in many instances she has failed to offer any meaningful substantive support for the denial.  Instead, she has offered what is in essence a blanket denial without adequate

reference to the record.  (Pl. SMF, Responses 10, 12, 13, 14, 16, 21, 30, and 39.)

This is plainly insufficient, contrary to the very terms of the Local Rule, and allows

the Court no meaningful way of determining whether there is, in fact, any support

for the asserted denial.

In other instances, the plaintiff has relied upon little other than repeated

reference to language contained in the May 12, 2006 memorandum from the school

district acknowledging the plaintiff's hire as a "Full-Time District Grounds

Maintenance Person," as if repeated reference this isolated language is sufficient to

throw into dispute the plaintiff's own testimony, and the testimony of others,

including non-parties, regarding the nature of the plaintiff's work duties – an issue

at the very center of this action and the plaintiff's claims.  (*Id.*, Responses 2, 9, 11,

24.)

Perhaps most curiously, in other places the plaintiff has offered as evidential

support an interoffice memorandum that her counsel's paralegal appears to have

drafted in support of the claims in this case, something that is not only plainly

hearsay, but simply is not substantive evidence at all and, in fact, does not itself

contain any reference to evidentiary support for its own factual assertions.  (Pl.

SMF, Ex. C, Memorandum from Rick Suppan to Richard Orloski dated May 11,

2015.)  Indeed, the memo reads as nothing more than the unsupported assertions,

analysis and conclusions of counsel's support staff.  The Court simply cannot rely

upon the unsupported assertions and analysis contained in this document as support for any of the facts being asserted.

Finally, we note that in her brief the plaintiff endeavors to provide a factual narrative that relies heavily on the bare factual assertions that are contained within an amended complaint that she filed after the defendant had moved for summary judgment. It is axiomatic that the allegations set forth in a pleading are not evidence, and any suggestion that these unsubstantiated allegations should be deemed to create a disputed issue of fact in this case should be rejected. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Williams v. Borough of Westchester*, 891 F.2d 458, 460 (3d Cir. 1989). Furthermore, the Court has since ruled that this amended pleading should be stricken. (Doc. 31.) In short, the plaintiff's attempts to create disputed issues of fact by incorporating new factual allegations in an amended complaint that has since been stricken should be disregarded.

Although we have endeavored to resolve all doubts regarding factual assertions in the plaintiff's favor where possible, the plaintiff has in the end offered little to no substantive support for her own version of the facts she has asserted, or in support of her purported denials of the facts as portrayed by the defendant. In accordance with the well-established law in this field, where the defendant's supported version of the facts has not been properly disputed and where the

plaintiff has not sufficiently disputed those facts, we have, therefore, accepted the asserted facts as true.

### B.   Factual Background

Lauren Chickilly was hired as a part-time custodian with the Panther Valley School District in 2001.  (Def. SMF ¶ 1.)  In this employment capacity, Chickilly was charged with maintaining and preparing the school district's track, baseball, football and softball fields, and ensuring that the fields were ready for practices and games.  (*Id.* ¶ 2.)  As a part-time custodian, Chickilly was also a member of Teamsters Union 773 ("Union").  (*Id.* ¶ 3.)  Darrin Fry is the business agent for the Union, and responsible for negotiating and enforcing contracts and representing union members, specifically support staff employees like Chickilly, in all areas of their employment.  (*Id.* ¶4.)

Fry was responsible for negotiating the collective bargaining agreement ("CBA") that was effective from July 1, 2005, to June 30, 2008.  (*Id.* ¶ 5.)  At the time the CBA was being negotiated, the school district's chief complaint with the bargaining unit is that it had too many part-time custodians.  The plaintiff was one such part-time custodian, responsible for grounds maintenance.  (*Id.* ¶ 7.)  During the contract negotiations, the union and the school district agreed that the ground maintenance position would become a full-time custodial position.  (*Id.*)

On May 11, 2006, the school district appointed the plaintiff as a "Full-time District Grounds Maintenance Person" at a salary of $9.50 per hour.  (*Id.* ¶ 9.)  As part of her duties, the plaintiff was responsible for maintaining the athletic fields, plowing snow in the winter, and performing some general light maintenance of equipment used as part of her job.  Her job was confined almost exclusively to work outside the buildings, although the plaintiff indicates that she did some painting inside on occasion.  (*Id.* ¶ 11 and Ex. 1, Deposition of Lauren Chickilly ("Chickilly Dep.), pp. 16-17; Pl. SMF, Ex. C.)

In general, and according to her testimony, the plaintiff's job duties remained largely unchanged when she went from the part-time to the full-time position.  (Def. SMF ¶ 12, Chickilly Dep., p. 20, ll. 17-24.)  The plaintiff was assisted in her duties by Andy Machalik, a part-time custodian, until his retirement. (Def. SMF ¶ 13; Chickilly Dep., pp. 25-26; Ex. 2, Deposition of Darrin Fry ("Fry Dep."), pp. 48-49; Pl. SMF ¶12.)

According to Darrin Fry, the full-time position into which the plaintiff was hired was classified as a "custodian position".  (Def. SMF ¶ 13; Chickilly Dep. at p. 38, ll. 8-13.)  Although the plaintiff argues that she was a "maintenance person", the union considered her to be a "custodian" under the terms of the CBA as it was negotiated by the union and the school district.  (Fry Dep. at p. 20, ll. 8-10; p. 21, ll. 22-23; p. 23, ll. 6-11; p. 25, ll. 12-21.)  Although this was the union's

interpretation of the job, the notice approving the plaintiff's hire indicated that she was hired as a "Full-Time District Grounds Maintenance Person." (Pl. SMF, Ex. A.)

From 2006 until the plaintiff was furloughed, Michael Kracum and Joseph Cox were the school district's only full-time building maintenance employees. (Def. SMF ¶ 18.) It is undisputed that Messrs. Kracum and Cox had different responsibilities and duties as compared to the plaintiff's job position. (*Id.* ¶19; Pl. SMF ¶19 (admitting that Kracum and Cox were responsible for "inside" building maintenance whereas the plaintiff admittedly was responsible for grounds maintenance).) The building maintenance staff were required to have skill in at least two of the following areas; masonry; electrical; plumbing; HVAC; carpentry; or mechanics. By her own admission, the plaintiff had no formal skill or training in any of these areas, and conceded that her only experience was derived from doing some random projects around the house with her father. (Chickilly Dep., pp. 102-03.) Moreover, it is undisputed that if any of the school buildings required maintenance in the area of HVAC, plumbing or carpentry, it would be handled exclusively by either Mr. Kracum or Mr. Cox. (*Id.*, pp. 103-04.)

In late fall or early winter of 2013, the school district put the union on notice that it was considering outsourcing custodial services, and subsequently in or around January, 2014, Mr. Fry and the union began negotiations with the school

8

district to contract out custodial services. (Fry Dep., pp. 16-17, 45.) On June 12, 2014, the school district voted to subcontract custodial services. (Doc. 18, Ex. 11, Memorandum of Understanding.) On July 15, 2014, after having reviewed Quarterly Work Assignment Reports that showed she was classified as a "Full-Time Custodian," something she apparently learned of for the first time as a result of that review, the plaintiff filed a grievance. (Def. SMF ¶¶ 30-31.) At the time that she filed this grievance, the plaintiff already knew that she was going to be furloughed as a result of the school district's decision to contract out custodial services. (Chickilly Dep., p. 91, ll. 4-10.) Fry also testified that by the time the plaintiff filed the grievance, it had already been decided that the school district was going to outsource all custodial positions, including the plaintiff's. (Fry Dep., p. 41, ll. 14-22.) Darrin Fry informed the plaintiff that her grievance was meritless because her job had been created as part of the 2005 CBA, which classified her job as custodial. (Fry Dep., pp. 42-43.)

On August 19, 2014, the union and the school district entered into a formal memorandum of understanding regarding the school district's decision to outsource the custodial positions. (Fry Dep., pp. 31-36; Doc. 18, Ex. 11, Memorandum of Agreement.) According to the terms of the Memorandum of Agreement, the plaintiff and all other furloughed custodial staff were paid their accrued vacation and sick time and received an additional year of recall rights, but

waived their right to challenge the district's decision before the Pennsylvania Labor Relations Board or in any other forum.  (Doc. 18, Ex. 11, Memorandum of Agreement; Ex. 12; Fry Dep., p. 77, ll. 4-9.)  The plaintiff was furloughed on July 25, 2014.  (Doc. 18, Ex. 12, Furlough Letter Dated July 25, 2014; Chickilly Dep., p. 77, ll. 4-9; Fry Dep., p. 45, ll.7-12.)

## III.   <u>STANDARD OF REVIEW</u>

Rule 56(a) of the Federal Rules of Civil Procedure provides as follows:

> A party may move for summary judgment, identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought.  The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed. R. Civ. P. 56(a).  For purposes of Rule 56, a fact is material if proof of its existence of nonexistence might affect the outcome of the suit under the applicable substantive law.  *Haybarger v. Laurence Cnty. Adult Prob. & Parole*, 667 F.3d 408, 412 (3d Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  For an issue to be genuine, "all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge

to resolve the parties' differing versions of the truth at trial." *Id.* (quoting *Anderson*, 477 U.S. at 248-49).

Accordingly, in support of a motion for summary judgment, the moving party must show that if the evidence of record were reduced to admissible evidence in court, it would be insufficient to allow the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Provided the moving party has satisfied this burden, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Instead, if the moving party has carried its burden, the non-moving party must then respond by identifying specific facts, supported by evidence, which show a genuine issue for trial, and may not rely upon the allegations or denials of its pleadings. *See Martin v. Godwin*, 499 F.3d 290, 295 (3d Cir. 2007); *see also* Fed. R. Civ. P. 56 (c).

In adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, *Anderson*, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Id.* Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make

credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. *Id.* at 252; *see also Big Apple BMW*, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the factfinder to ascertain the believability and weight of the evidence.

*Id.* In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted); *NAACP v. North Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011).

## IV.   DISCUSSION

### A.   Equal Pay Act Claim

The crux of this action is the plaintiff's claim that the school district violated the Equal Pay Act by paying her a lesser wage than that paid to Kracum and Cox, the men responsible for indoor maintenance at the school, who she alleges

performed the same or substantially the same work as she did in her work in grounds maintenance.

The Equal Pay Act provides in relevant part as follows:

**(d) Prohibition of sex discrimination**

**(1)** No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, that an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C.A. § 206(d)(1).

Unlike in the context of other employment claims brought under statutes that follow the familiar three-part burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), claims alleging unequal pay in violation of the Equal Pay Act follow a "two-step burden-shifting paradigm."

13

*Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000).  The Third Circuit has

explained this process as follows:

> The plaintiff first must establish a prima facie case by
> demonstrating that employees of the opposite sex were
> paid differently for performing "equal work" – work of
> substantially equal skill, effort and responsibility, under
> similar working conditions.  *E.E.O.C. v. Delaware Dept.
> of Health and Social Services*, 865 F.2d 1408, 1413-14
> (3d Cir. 1989).  The burden of *persuasion* then shifts to
> the *employer* to demonstrate the applicability of one of
> the four affirmative defenses specified in the Act.  *Id.* at
> 1414 (citing *Corning Glass Works v. Brennan*, 417 U.S.
> 188, 195, 94 S. Ct. 2223, 41 L.Ed.2d 1 (1974).  Thus, the
> employer's burden in an Equal Pay Act claim – being
> one of ultimate persuasion – differs significantly from its
> burden in an ADEA claim.  Because the employer bears
> the burden of proof at trial, in order to prevail at the
> summary judgment stage, the employer must prove at
> least one affirmative defense "so clearly that no rational
> jury could find to the contrary."  *Delaware Dept. of
> Health*, 865 F.2d at 1414.

*Id.* (original emphasis) (internal footnote omitted).  If the defendant conclusively

establishes an affirmative defense, the plaintiff must prove that the

nondiscriminatory justification was merely a pretext for unlawful discrimination.

*E.E.O.C. v. State of Del. Dept. of Health and Social Servs.*, 865 F.2d 1408, 1414

n.8 (3d Cir. 1989); *Puchakjian v. Twp. of Winslow*, 804 F. Supp. 2d 288, 294

(D.N.J. 2011).

14

Thus, at the outset, a plaintiff must come forward with evidence to show that employees of the opposite sex were paid unequally for " 'equal work' – work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale*, 200 F.3d at 107.  This inquiry does not focus on "the name under which the position was classified" or on its job description.  *Wildi v. Alle-Kiski Med. Ctr.*, 659 F. Supp. 2d 640, 659 (W.D. Pa. 2009) ("For the same reason that job titles are not determinative, job descriptions are not determinative."); *Rowland v. Certainteed Corp.*, Civ. A. No. 08-3671, 2009 WL 1444413, *9 (E.D. Pa. May 21, 2009) ("[Plaintiff] makes much of the titles attributed to their various positions.  But [plaintiff] cannot rely on job titles to survive summary judgment.  The law does not demand that all persons with the title of 'director' within the same company must earn the same salary and the Court cannot assume that directors and managers earn a certain salary.").   "Rather, a plaintiff must prove [her] case through the 'actual job content' and what 'was actually done.' " *Puchakjian*, 804 F. Supp. At 294 (quoting *Brobst v. Columbus Servs. Intern.*, 761 F.2d 148, 155 (3d Cir. 1985)); *see also Heller v. Elizabeth Forward Sch. Dist.*, 182 F. App'x 91, 95 (3d Cir. 2006) (""[W]hen a court assesses the substantial equality between jobs, it should rely on actual job performance and content rather than job descriptions.").

15

Accordingly, "[t]he crucial finding on the equal work issue is whether the jobs to be compared have a common core of tasks, i.e., whether a significant portion of the two jobs is identical." *Brobst*, 761 F.2d at 156; *cf. Shultz v. Wheaton Glass Co.*, 421 F.2d 259, 265 n.10 (3d Cir. 1970) (observing that this test does not mandate that two jobs be identical in all respects, only that the "different tasks which are only incidental and occasional would not justify a wage differential."). In terms of the factors to be considered when determining whether tasks are similar, courts will look at whether the jobs "require similar quality and quantity of production, education, relevant prior work experience, conduct and skill." *Dubowsky*, 922 F. Supp. At 990 (citing 29 C.F.R. § 1620.13). If a court finds that the jobs being compared share a common core of tasks, "[t]he inquiry then turns to whether the differing or additional tasks make the work substantially different." *Brobst*, 761 F.2d at 156.

In determining whether jobs require equal skill, equal effort, or equal responsibility, the court must conduct a separate analysis that is guided by applicable regulations in this field. For example, consideration of the skill involved for the tasks being compared requires courts to consider factors such as experience, training, education and ability. 29 C.F.R. § 1620.15(a). Consideration of the "effort" involved in each job focuses on assessing the physical or mental exertion needed for performance of each job. 29 C.F.R. § 1620.16(a).

16

"Responsibility" relates to "the degree of accountability required in the performance of the job, with emphasis on the importance of the job obligation." 29 C.F.R. § 1620.17(a).

With these guidelines in mind, we find that the plaintiff has not adduced sufficient evidence to make out a prima facie case of unequal pay under the Act. In short, the plaintiff has not identified sufficient evidence to show that there is a triable issue with respect to her contention that she was engaged in "equal work" with the two comparator employees she has identified. Instead of pointing to actual evidence of the work being performed in the jobs being compared, the plaintiff seems to have based her entire claim on her job title, which as noted is simply inadequate. Indeed, she has not provided citation even to her own deposition or any other evidence from which the Court could determine that there existed disputed issues regarding the alleged equality between her job as a District Grounds Maintenance Person and the indoor building maintenance positions held by Messrs. Kracum and Cox.

Furthermore, the evidence that has been presented to the Court leaves no doubt that the jobs were significantly different, and required substantially different skills and experience. For example, the evidence shows that the indoor building maintenance work required that the employees responsible for this work be skilled in at least two of the following areas:  carpentry, masonry, electrical work,

plumbing, HVAC, and mechanics.  (Doc. 18, Ex. 9.)  The plaintiff admitted that she had no training or other adequate skill in any of these areas, and that the extent of her experience was obtained in assisting her father with home projects. (Chickilly Dep. at pp. 28-29 and 102-104.)  Indeed, the plaintiff conceded that she was not equipped to handle any of the building maintenance issues that Kracum and Cox managed.  Thus, in terms of relevant skill and experience, the plaintiff conceded that she was not on equal or even substantially equal footing to either comparator employee.

The building maintenance personnel also concededly had an entirely different set of responsibilities than the plaintiff, as they were responsible for ensuring the repair and maintenance of the buildings themselves and the electrical, HVAC and other mechanical aspects of the facilities that housed students and staff. In contrast, the plaintiff was responsible for mowing the grass, maintaining the outdoor school grounds, tending to the athletic fields and ensuring that her outdoor equipment was in good working order.  The plaintiff points to no evidence from which the Court could conclude that the job positions are substantially similar, or that the responsibilities for these different jobs were nonetheless substantially the same, and in fact they are plainly different.  Instead, the plaintiff focuses exclusively on the fact that her job title included in it the word "maintenance," as if from this undisputed fact the Court could conclude that she was responsible for

performing – and in fact did perform – similar work to either of the building maintenance employees. There simply is no evidence that the plaintiff performed comparable work, or had comparable responsibility to the two comparators she has used as a predicate for her claim of unequal pay.

Because the plaintiff has not presented evidence that is sufficient to satisfy the first prong of the two-part burden-shifting process that she was employed to perform "equal" work as that term is defined by the Act, its implementing regulations and Third Circuit authority, the Court should conclude that as a matter of law that the school district is entitled to summary judgment on her Equal Pay Act claim.

### B.    Retaliation Claim

The plaintiff also claims that she was retaliated against in violation of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). That statute makes it unlawful for any person

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or cause to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

29 U.S.C. § 215(a)(3). The FLSA's retaliation provision is applicable to Equal Pay Act retaliation claims. *Wildi*, 659 F. Supp. 2d at 664. Claims for retaliation under the FLSA are analyzed under the three-part burden-shifting framework prescribed

by *McDonnell Douglas*. *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002).

Under that framework, to make out a claim for retaliation a plaintiff must show that (1) she engaged in protected activity, (2) she experienced an adverse employment action after or contemporaneous to the protected activity, and (3) there was a causal connection between the protected activity and the adverse employment action. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). If the plaintiff succeeds in making a prima facie case, the burden is returned to the defendant to establish a legitimate, nonretaliatory reason for the adverse employment action. *Woodson*, 109 F.3d at 920 n.2. If the defendant meets the burden of producing evidence of a nonretaliatory reason for the action, then the ultimate burden of persuasion returns to the plaintiff who must prove that the alleged reason proffered by the defendant were pretextual. *Marra*, 497 F.3d at 300 (citing *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)).

In this case, the plaintiff's retaliation claim plainly fails. The plaintiff's claim of retaliation is predicated on her claim that she filed a grievance to complain about her pay on July 14, 2014. She was officially furloughed on July 25, 2014, and she contends that the furlough decision was retaliatory. The problem with this theory is that the undisputed evidence shows that more than a month

before the plaintiff's grievance, the school district had officially decided to subcontract out custodial services, which included the plaintiff's outdoor maintenance job.[1] (Doc. 18, Ex. 11, Memorandum of Agreement.)  Indeed, this plan was in the works since late 2013, when the school district put the union on notice it was looking to outsource custodial work.

As a result of this decision by the school district, it was determined that all school district custodial staff would be furloughed.  Indeed, the plaintiff conceded during her deposition that by the time she filed her grievance, she was aware that she was going to be furloughed.  (Chickilly Dep., p. 91, ln. 4-10.)  Finally, the school district and the union had entered into a memorandum of agreement on August 19, 2014, which provided that the union on behalf of each of its affected custodial employees waived the right to challenge the school district's decision –

---

[1]   The undisputed evidence shows that the union and its lead negotiator, Darrin Fry, considered the plaintiff to be a custodial employee.  The plaintiff desperately seeks to avoid the fact that her employment was considered by the school district and her own bargaining unit to be custodial, and in so doing she again resorts to identifying herself as a "maintenance" employee.  Whether or not she was called a "maintenance" employee in her job title, the plaintiff has not adequately come forward with evidence to dispute the district's evidence that the plaintiff's job position was "custodial."  Mr. Fry testified under oath that when it was negotiating the CBA with the school district, the union considered the plaintiff to be a custodian, and it was agreed under the CBA that the plaintiff would be considered a full-time custodian and would retain the full-time position that she had held previously in a part-time capacity.  (Fry Dep. at p. 20, ll. 8-10; p. 21, ll. 22-23; p. 23, ll. 6-11; p. 25, ll. 12-21.)  Supporting this understanding is evidence showing that the plaintiff was compensated as a full-time custodian in accordance with the terms of all CBAs, and that the duties she performed had been done by custodial staff for years.  (Fry Dep., at pp. 26-31 and p. 44, ll. 1-8.)

something that further undermines the plaintiff's contention that her own furlough was somehow tied to a grievance that she filed. In short, the factual predicate for the plaintiff's retaliation claim is untenable, as the protected activity did not occur until after the school district had made the decision to furlough the plaintiff in the summer of 2014. Accordingly, the undisputed facts foreclose the plaintiff's theory of retaliation, and prevent her from being able to make out a prima facie claim on the facts asserted.

## V.   <u>RECOMMENDATION</u>

For the foregoing reasons, IT IS RECOMMENDED that the school district's motion for summary judgment (Doc. 18.) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

*/s/  Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated:  September 21, 2016